**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| MR LICENSING LLC, | § | Case No. |
|  | § |  |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
|  | § |  |
| v. | § |  |
|  | § |  |
| RENESAS ELECTRONICS | § |  |
| CORPORATION, DENSO | § |  |
| CORPORATION, and DENSO | § |  |
| INTERNATIONAL AMERICA, | § |  |
|  | § |  |
| Defendants. | § |  |
|  | § |  |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff MR Licensing LLC ("MRL" or "Plaintiff") files this Complaint against Defendants Renesas Electronics Corporation ("Renesas"), Denso Corporation ("DC") and Denso International America ("DIA"), (collectively, "Defendants") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

**THE PARTIES**

1.      Plaintiff MRL is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 313 South Washington Avenue, Marshall, Texas 75670. MRL is the owner of all rights, title, and interest in and to U.S. Patent Nos. 6,825,689 (the "'689 Patent"); 7,103,381 (the "'381 Patent"); 7,761,232 (the "'232 Patent"); and 8,027,789 (the "'789 Patent"); 6,243,300 (the "'300 Patent"); 7,679,968 (the "'968 Patent"); 7,089,133 (the "'133 Patent"); 7,825,688 (the "'688 Patent"), (collectively, the "Patents-in-Suit").

2.      Upon information and belief, Defendant Renesas is a corporation duly organized and existing under the laws of Japan, having a place of business located at Toyosu Foresia, 3-2-24

Toyosu, Koto-ku, Tokyo 135-0061, Japan, and may be served pursuant to the provisions of the Hague Convention.

3.      Upon information and belief, Defendant DC is a corporation duly organized and existing under the laws of Japan, having a place of business located at 1-1, Showacho, Kariya, Aichi Prefecture, 448-0029, Japan, and may be served pursuant to the provisions of the Hague Convention.

4.      Upon information and belief, Defendant DIA is a wholly-owned subsidiary of DC, and is a corporation duly organized under the laws of Delaware, with a regular and established place of business at 2701 West Plano Parkway, Plano, Texas 75075.  DIA may be served with process through its registered agent, Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1338(a).

6.      This Court has personal jurisdiction over each of the Defendants in this action consistent with the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because Defendants have committed acts within this District giving rise to this action, and have established minimum contacts with this forum, such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and/or through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the Patents-in-Suit, and inducing others to infringe the Patents-in-Suit in this

District. Defendants are directly and/or through intermediaries making, using, selling, offering for sale, distributing, advertising, promoting, and otherwise commercializing their infringing products in this District.

7.     Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to the residents of this District and the State of Texas. Renesas is subject to jurisdiction pursuant to due process and/or the Texas Long Arm Statute due to its substantial business in this State and District including at least its infringing activities, regularly doing or soliciting business with the DC and/or DIA, including through their operations in Texas and within this District, and engaging in persistent conduct and deriving substantial revenues from goods and services provided to residents in the State of Texas including the Eastern District of Texas.  DC and DIA are also subject to jurisdiction pursuant to due process and/or the Texas Long Arm Statute due to their substantial business in this State and District, including at least their infringing activities, regularly doing or soliciting business within this State and within this District, and operating multiple places of business within this District.  Defendants direct infringing products and services into this District and sell, offer for sale, service and support infringing activities in this District, including by customers of Defendants' products, such as Toyota, which operates in this District.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), (d), and 1400(b).  Renesas is a foreign corporation as to which venue is proper in any Judicial District pursuant to 28 U.S.C. § 1391(c)(3).  Likewise, DC is a foreign corporation as to which venue is proper in any Judicial District pursuant to 28 U.S.C. § 1391(c)(3).  DIA has a permanent and continuous presence in, has committed acts of infringement in, and maintains regular and established places of business in this District. Defendants have committed acts of direct and indirect

infringement in this Judicial District including using and purposefully transacting business involving infringing products in this Judicial District, such as by sales to one or more customers in the State of Texas including in the Eastern District of Texas.  DIA maintains a regular and established place of business in this District, including at 2701 West Plano Parkway, Plano, Texas 75075.  DIA also maintains a regular and established place of business at 801 South Ware Road, Suite 200, McAllen, Texas 78503.  Further, DC, through its subsidiaries, operates a regular and established place of business at 5850 Granite Parkway, Suite 950, Plano, Texas 75024.

## PATENTS-IN-SUIT AND FACTUAL BACKGROUND

9.      On November 30, 2004, the United States Patent and Trademark Office duly and legally issued U.S. Patent No 6,825,689 (the "'689 Patent"), entitled "Configurable input/output interface for a microcontroller." A true and correct copy of the '689 Patent is available at https://patentimages.storage.googleapis.com/49/c1/1e/1ad2d9323a524c/US6825689.pdf.

10.     On September 5, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No 7,103,381 (the "'381 Patent"), entitled "Method and/or apparatus for implementing USB and audio signals shared conductors." A true and correct copy of the '689 Patent                      is                      available                      at https://patentimages.storage.googleapis.com/ac/53/37/6d43853bde7dc5/US7103381.pdf.

11.     On July 20, 2010, the United States Patent and Trademark Office duly and legally issued U.S. Patent No 7,761,232 (the "'232 Patent"), entitled "Wireless locating and monitoring system." A    true    and    correct    copy    of    the    '232    Patent    is    available    at https://patentimages.storage.googleapis.com/f9/69/ad/7aa4606c0664e9/US7761232.pdf.

12.     On September 27, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No 8,027,789 (the "'789 Patent"), entitled "Wireless locating and

monitoring system." A true and correct copy of the '789 Patent is available at https://patentimages.storage.googleapis.com/d0/96/63/03e0b5d8932637/US8027789.pdf

13.    On June 5, 2001, the United States Patent and Trademark Office duly and legally issued U.S. Patent No 6,243,300 (the "'300 Patent"), entitled "Substrate hole injection for neutralizing spillover charge generated during programming of a non-volatile memory cell." A true and correct copy of the '300 Patent is available at https://patentimages.storage.googleapis.com/cf/91/e7/249bb64a9e6ba5/US6243300.pdf.

14.    On March 16, 2010, the United States Patent and Trademark Office duly and legally issued U.S. Patent No 7,679,968 (the "'968 Patent"), entitled "Enhanced erasing operation for non-volatile memory." A true and correct copy of the '968 Patent is available at https://patentimages.storage.googleapis.com/1d/bc/60/88922f10d9042c/US7679968B2.pdf.

15.    On August 8, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No 7,089,133 (the "'133 Patent"), entitled "Method and circuit for providing a system level reset function for an electronic device." A true and correct copy of the '133 Patent is available at https://patentimages.storage.googleapis.com/8f/e0/2c/45186bd232f4e8/US7089133.pdf.

16.    On November 2, 2010, the United States Patent and Trademark Office duly and legally issued U.S. Patent No 7,825,688 (the "'688 Patent"), entitled "Programmable microcontroller architecture(mixed analog/digital)." A true and correct copy of the '688 Patent is available at https://patentimages.storage.googleapis.com/d2/82/5f/968ea1e25e93cc/US7825688.pdf.

17.    MRL is the sole and exclusive owner of all right, title, and interest in the '689 Patent, the '381 Patent, the '232 Patent, the'789 Patent, the '300 Patent, the '968 Patent, the '133 Patent, and the '688 Patent, and holds the exclusive right to take all actions necessary to enforce

its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. MRL also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

18. On information and belief, Defendant Renesas designs and manufactures and/or has manufactured on its behalf various products and components that infringe the Patents-in-Suit. Defendants DC and DIA (collectively, "Denso Defendants") incorporate infringing Renesas products and components into products sold by the Denso Defendants.  The infringing products are then sold for importation into the United States, imported into the United States, and/or sold, offered for sale, and/or used within the United States after importation (including importing products made by a patented process), including within this District. Denso Defendants and Renesas are close collaborators in making and developing computer components for use in a wide variety of applications served by Denso Defendants, and other, products. For example, the Renesas RH850 was used in a Denso Defendants, Renesas, Toyota collaborative effort to control the driving, steering and breaking functions of vehicles.[1] Denso owns approximately 5% of the equity of Renesas.

19. MRL has at all times complied with the marking provision of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

20. Defendants have infringed and continue to infringe one or more of the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import the Accused Products. The Accused Products comprise, at the least, (a) all products that contain global mapping systems for coupling an I/O pin to a plurality of functional units of a microcontroller, (b) all products that include transceiver

---

[1]     https://www.renesas.com/en/about/press-room/renesas-toyota-and-denso-bring-autonomous-driving-vehicles-market-faster

circuits configured to couple analog input/output signals with a multiplexer circuit when in a first state, and to couple digital input/output signals with the multiplexer circuit when in a second state, (c) all products that periodically determine a vehicle location, scan to locate available wireless data network access points, and transmit the vehicle location through the located access point to an endpoint receiver, (d) Renesas products with embedded flash memory macro manufactured using 28nm process; Renesas products with embedded flash memory macro manufactured using 40nm process; Renesas products with embedded flash memory macro manufactured by Renesas using older than 40nm process; all other Renesas products that include flash memory configured to erase memory cells by generating neutralizing holes in a substrate, moving the neutralizing holes to the channel; and substantially neutralizing spillover electrons in the channel with the neutralizing holes, (e) Renesas products with LVD support, and (f) Renesas products that include integrated chips with programmable digital and analog circuit blocks capable of communicating with one another. The Accused Procducts further comprise, at least, the Renesas RL78/F13 and F14 MCUs, R5F10PLJL, R5F10PLJLFB M16C/5M and M16C/57 MCU Groups, RX71M, RX Family / RX600 and RX700 Series and RL78/F15 MCUs, V2X Solution; R-Car W2R, R-Car W2H, R-Car H3 Series, , RA6M3 Group, R-Car E2, S7G2, RA4M3, RA6M4, V850E2/Mx4, uPD70F4021, uPD70F4022, uPD70F3410, uPD70F3412, uPD70F3414, uPD70F3415, SH72531, R5F72531KFPU, SH72531D, R5F72531DKFPU, H8SX MCUs, and RH850 Family Microcontrollers. Defendants have received prior notice about the Patents-in-Suit and their infringement of the Patents-in-Suit, and/or have remained been willfully blind to the Patents-in-Suit.

## COUNT I
### (Infringement of the '689 Patent)

21.    Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

22.     MRL has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '689 Patent.

23.     Defendants infringed, contributed to the infringement of, and/or induced infringement of the '689 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '689 Patent including, but not limited to, at least the Accused Products.

24.     Defendants have directly infringed the '689 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '689 Patent. Upon information and belief, the Accused Products practice the methods and systems covered by the '689 Patent.

25.     For example, Defendants directly infringed at least claim 1 of the '689 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise microcontrollers having a microprocessor and an input/output interface comprising: a) an input/output pin; b) a global mapping system for selectively coupling said input/output pin to a plurality of functional units of said microcontroller; and c) a configuration system for defining a system function for said input/output pin and for selectively coupling said input/output pin to one of said microprocessor and to said global mapping system.

26.     The Accused Products are microcontrollers having a microprocessor and an input/output interface. For example, the V850E2/ML4 is a microcontroller that contains a V850E2M CPU Core, and contains 113 input output ("I/O") pins.

## 1.1 Overview

The V850E2/ML4 is a 32-bit single-chip microcontroller that integrates V850E2M 32-bit RISC CPU core, which was developed by enhancing the performance of the V850E1 CPU and V850E2 CPU. The V850E2/ML4 includes flash memory, RAM, and various peripheral functions, and is used to perform large-capacity data processing and advanced real-time control.

**(1) V850E2M CPU**

The V850E2M CPU further enhances the performance of the V850E2 CPU.

The V850E2M CPU improves the CPU processing performance through optimization of the two-way superscalar seven-stage pipeline control. A floating point unit (FPU) that conforms to IEEE754-1985 is also included.

Note that, because the instruction codes are compatible with the V850, V850E1, and V850E2 CPUs at the object code level, conventional system software assets can be used as is.

Source: Renesas V850E2/ML4 User's Manual: Hardware

# I/O: 113 pins

*Id.*

27.    The Accused Products comprise an input/output pin. For example, the Renesas V850E2/ML4, contains a "general purpose" I/O pin.

- **Port mode / Port**
  A pin in port mode works as a general purpose input/output pin. It is then called "port".
  The corresponding name is Pn_m. For example, P0_7 denotes port 7 of port group 0. It is referenced as "port P0_7".
- **Alternative mode**
  In alternative mode, a pin can be used for in various non-general purpose input/output functions, for example as the input/output pin of on-chip peripherals.
  The corresponding pin name depends on the selected function. For example, pin INTP0 denotes the pin for one of the external interrupt inputs. Note that two or more different names can refer to the same physical pin, for example P0_0 and INTP0. The different names indicate the function in which the pin is being operated.

*Id.*

28.    The Accused Products comprise a global mapping system for selectively coupling said input/output pin to a plurality of functional units of said microcontroller. For example, the

9

Renesas V850E2/ML4 has registers in the global mapping system for selectively coupling individual input/output pins to one of up to four functional units of the microprocessor.

The following registers are used for the configuration of the individual pins of the port groups:

Table 8-6   Registers for port group configuration

| Register name | Shortcut | Address |
|---|---|---|
| Pin function configuration | | |
| Port mode control register | PMCn | <PORTn_base_USER> + 0400$_H$ + n x 4 |
| Port mode control set/reset register | PMCSR | <PORTn_base_USER> + 0900$_H$ + n x 4 |
| Port IP control register | PIPCn | <PORTn_base_USER> + 4200$_H$ + n x 4 |
| Port mode register | PMn | <PORTn_base_USER> + 0300$_H$ + n x 4 |
| Port mode set/reset register | PMSR | <PORTn_base_USER> + 0800$_H$ + n x 4 |
| Port input buffer control register | PIBCn | <PORTn_base_OS> + 4000$_H$ + n x 4 |
| Port function control register | PFCn | <PORTn_base_USER> + 0500$_H$ + n x 4 |
| Port function control expansion register | PFCEn | <PORTn_base_USER> + 0600$_H$ + n x 4 |
| Pin data input/output | | |

29.    The Accused Products comprise a configuration system for defining a system function for said input/output pin and for selectively coupling said input/output pin to one of said microprocessor and to said global mapping system. For example, the Renesas V850E2/ML4 provides a configuration system for defining the system function of each general-purpose input/output pin and can also assign many of these pins to a plurality of functional units by using the alternative mapping function in the global mapping system.

Table 8-3   Pin function settings (overview)

| Mode | Bit | | | I/O |
|------|-----|-----|-----|-----|
| | PMCnm | PMnm | PIPCnm | |
| Port mode | 0 | 0 | X | Output |
| | | 1[a] | | Input |
| S/W I/O control mode | 1 | 0 | 0 | Output |
| | | 1 | 0 | Input |
| Direct I/O control mode | | X | 1 | Control by alternative function |

a)   Be sure to enable the input buffer (PIBCnm = 1).

When a pin is used in the alternative mode (PMCn.PMCnm = 1), one of up to four different alternative functions is selected with the PFCn and PFCEn registers.

- S/W I/O control function (PIPCn.PIPCnm = 0):
  - Output (PMnm = 0): ALT-OUT1 to ALT-OUT4
  - Input (PMnm = 1): ALT-IN1 to ALT-IN4
- Direct I/O control function (PIPCn.PIPCnm = 1):
  - I/Os of ALT-OUT1 to ALT-OUT4 and ALT-IN1 to ALT-IN4 are directly selected by the alternative function.

30.     Through demonstrations, testing, repairs, and instructional guidance, Defendants use the Accused Products in a manner that directly infringes claim 1 of the '689 Patent.

31.     Defendants have indirectly infringed one or more claims of the '689 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States. For example, Defendants' customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products. Defendants induced this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendants' inducement, Defendants' customers and end-users used the Accused Products in a way Defendants intend and

they directly infringed the '689 Patent. Defendants performed these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '689 Patent, but while remaining willfully blind to the infringement.

32.    Defendants have indirectly infringed one or more claims of the '689 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '689 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '689 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '689 Patent. Defendants performed these affirmative acts with knowledge of the '689 Patent and with intent, or willful blindness, that they cause the direct infringement of the '689 Patent.

33.    MRL is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '689 Patent.

34.    MRL has suffered damages as a result of Defendants' direct and indirect infringement of the '689 Patent in an amount to be proved at trial.

<u>**COUNT II**</u>
**(Infringement of the '381 Patent)**

35.    Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

36.    MRL has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '381 Patent.

37.    Defendants infringed, contributed to the infringement of, and/or induced infringement of the '381 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '381 Patent including, but not limited to, at least the Accused Products.

38.    Defendants have directly infringed the '381 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '381 Patent. Upon information and belief, these products include the Accused Products that practices the methods and systems covered by the '381 Patent.

39.    For example, Defendants have infringed at least claim 1 of the '381 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a transceiver circuit comprising a multiplexer circuit, an interface circuit, a physical layer interface and a plurality of bus input/outputs (I/Os), wherein (a) said transceiver circuit is configured to directly couple (i) an analog input signal to said bus I/Os with said multiplexer circuit when said bus I/Os are in a first state and (ii) a plurality of first digital signals to said bus I/Os with said multiplexer circuit when said bus I/Os are in a second state, (b) said multiplexer circuit is configured to present/receive (i) an analog output signal on an input/output when in said first state and (ii) said plurality of first digital signals on said input/output when in said second state, and (c) said interface circuit is configured to present a control signal to said multiplexer circuit and said physical layer interface to control coupling in response to said first state and said second.

40.    The Accused Products comprise a transceiver circuit comprising a multiplexer circuit, an interface circuit, a physical layer interface and a plurality of bus input/outputs (I/Os). For example, the Renesas RL78/F14 is a transceiver circuit which has a multiplexer, an interface circuit, a physical interface and a plurality of bus I/Os. For example, on information and belief, Port 8 is a transceiver comprising bus I/Os P80 to P87, GPIO for each of the I/Os, analog inputs and analog output along with the physical layer interfaces and multiplexers to select the desired function.



Source: RL78/F13,14 Manual

| P80 | I/O | Port 8 | Analog input | ANI2/ANO0 |
| P81 | | P80 to P87 can be set to analog input. | port | ANI3/IVCMP00 |
| P82 | | | | ANI4/IVCMP01 |
| P83 | | | | ANI5/IVCMP02 |
| P84 | | | | ANI6/IVCMP03 |
| P85 | | | | ANI7/IVREF0 |
| P86 | | | | ANI8 |
| P87 | | | | ANI9 |

*Id.*



Source:  REN_r01uh0368ej0210_rl78f13_14_MAN_20151210.pdf

*Id.*

15

41.    The Accused Products comprise a transceiver circuit wherein said transceiver circuit is configured to directly couple (i) an analog input signal to said bus I/Os with said multiplexer circuit when said bus I/Os are in a first state and (ii) a plurality of first digital signals to said bus I/Os with said multiplexer circuit when said bus I/Os are in a second state. For example, the Renesas RL78/F14's can be a combination of digital inputs, digital outputs, analog inputs, and analog output. For example, on information and belief, the port 8 interface can be configured to be digital input, digital output, or pulled up digital input. For example, on information and belief, as a general-purpose pin, P80 can be used to support a plurality of external signals as selected by software. Digital input and the digital output signals can be configured.

| P80 | I/O | Port 8 | Analog input port | ANI2/ANO0 |
| P81 | | P80 to P87 can be set to analog input. | | ANI3/IVCMP00 |
| P82 | | | | ANI4/IVCMP01 |
| P83 | | | | ANI5/IVCMP02 |
| P84 | | | | ANI6/IVCMP03 |
| P85 | | | | ANI7/IVREF0 |
| P86 | | | | ANI8 |
| P87 | | | | ANI9 |

**4.2.8  Port 8**

Port 8 is an I/O port with an output latch.  Port 8 can be set to the input mode or output mode in 1-bit units using port mode register 8 (PM8).

This port can also be used for analog input for A/D converter.

**Table 4-14.  Setting Functions of P80/ANI2/ANO0 Pin**

| ADPC Register | PM8 Register | DAM Register | DAM2 Register | ADS Register | Functions of ANO0/ANI2/P80 Pin |
|---|---|---|---|---|---|
| Digital I/O | Input mode | — | Enables analog output | — | Setting prohibited |
| | | | Disables analog output | | Digital input |
| | Output mode | — | Enables analog output | — | Setting prohibited |
| | | | Disables analog output | | Digital input |
| Analog I/O | Input mode | Enables D/A conversion operation | Enables analog output | Selects ANI | Setting prohibited |
| | | | | Does not selects ANI | Analog output (D/A conversion output) |
| | | | Disables analog output | Selects ANI | Analog input (to be converted) |
| | | | | Does not selects ANI | Analog input (not to be converted) Note |
| | | Stops D/A conversion operation | Enables analog output | Selects ANI | Setting prohibited |
| | | | | Does not selects ANI | Setting prohibited |
| | | | Disables analog output | Selects ANI | Analog input (to be converted) |
| | | | | Does not selects ANI | Analog input (not to be converted) |
| | Output mode | — | — | — | Setting prohibited |

42.     The Accused Products comprise a multiplexer circuit wherein said multiplexer circuit is configured to present/receive (i) an analog output signal on an input/output when in said first state and (ii) said plurality of first digital signals on said input/output when in said second state. For example, the Renesas RL78/F14's multiplexer can be configured by the control registers to present or receive an analog signal in a first state, and present/receive digital signals when in a second state.

| | | | | | |
|---|---|---|---|---|---|
| **Table 4-14.  Setting Functions of P80/ANI2/ANO0 Pin** | | | | | |
| ADPC Register | PM8 Register | DAM Register | DAM2 Register | ADS Register | Functions of ANO0/ANI2/P80 Pin |
| Digital I/O | Input mode | — | Enables analog output | — | Setting prohibited |
| | | | Disables analog output | | Digital input |
| | Output mode | — | Enables analog output | — | Setting prohibited |
| | | | Disables analog output | | Digital input |
| Analog I/O | Input mode | Enables D/A conversion operation | Enables analog output | Selects ANI | Setting prohibited |
| | | | | Does not selects ANI | Analog output (D/A conversion output) |
| | | | Disables analog output | Selects ANI | Analog input (to be converted) |
| | | | | Does not selects ANI | Analog input (not to be converted) Note |
| | | Stops D/A conversion operation | Enables analog output | Selects ANI | Setting prohibited |
| | | | | Does not selects ANI | Setting prohibited |
| | | | Disables analog output | Selects ANI | Analog input (to be converted) |
| | | | | Does not selects ANI | Analog input (not to be converted) |
| | Output mode | — | — | — | Setting prohibited |

43.    The Accused Products comprise an interface circuit wherein said interface circuit is configured to present a control signal to said multiplexer circuit and said physical layer interface to control coupling in response to said first state and said second. For example, the Renesas RL78/F14's names of the configuration registers that configure the multiplexers and the physical layer are shown at the top of Table 4-14 below.

Table 4-14. Setting Functions of P80/ANI2/ANO0 Pin

| ADPC Register | PM8 Register | DAM Register | DAM2 Register | ADS Register | Functions of ANO0/ANI2/P80 Pin |
|---|---|---|---|---|---|
| Digital I/O | Input mode | — | Enables analog output | — | Setting prohibited |
| | | | Disables analog output | | Digital input |
| | Output mode | — | Enables analog output | — | Setting prohibited |
| | | | Disables analog output | | Digital input |
| Analog I/O | Input mode | Enables D/A conversion operation | Enables analog output | Selects ANI | Setting prohibited |
| | | | | Does not selects ANI | Analog output (D/A conversion output) |
| | | | Disables analog output | Selects ANI | Analog input (to be converted) |
| | | | | Does not selects ANI | Analog input (not to be converted) Note |
| | | Stops D/A conversion operation | Enables analog output | Selects ANI | Setting prohibited |
| | | | | Does not selects ANI | Setting prohibited |
| | | | Disables analog output | Selects ANI | Analog input (to be converted) |
| | | | | Does not selects ANI | Analog input (not to be converted) |
| | Output mode | — | — | — | Setting prohibited |

44.    Defendants have indirectly infringed one or more claims of the '381 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States. For example, Defendants' customers and end-users directly infringed, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products. Defendants induced this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendants' inducement, Defendants' customers and end-users used the Accused Products in a way Defendants intended and they directly infringe the '381 Patent. Defendants performed these affirmative acts with the

intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '381 Patent, but while remaining willfully blind to the infringement. Through demonstrations, testing, repairs, and instructional guidance, Defendants use the Accused Products in a manner that directly infringes claim 1 of the '381 Patent.

45.     Defendants have indirectly infringed one or more claims of the '381 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '381 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '381 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '381 Patent. Defendants performed these affirmative acts with knowledge of the '381 Patent and with intent, or willful blindness, that they cause the direct infringement of the '381 Patent.

46.     MRL is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '381 Patent.

47.     MRL has suffered damages as a result of Defendants' direct and indirect infringement of the '381 Patent in an amount to be proved at trial.

## COUNT III
### (Infringement of the '232 Patent)

48.     Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

49.    MRL has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '232 Patent.

50.    Defendants infringe, contribute to the infringement of, and/or induce infringement of the '232 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '232 Patent including, but not limited to, at least the Accused Products.

51.    Defendants have and continue to directly infringe the '232 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '232 Patent. Upon information and belief, these products include the Accused Products that practice the methods and systems covered by the '232 Patent.

52.    For example, Defendants have and continue to directly infringe at least claim 1 of the '232 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of monitoring a vehicle comprising: from the vehicle, periodically determining a current status of the vehicle, the current status including current vehicle location; scanning to locate an available wireless data network access point; and periodically transmitting the current status of the vehicle to the located access point to an endpoint receiver.

53.    The Accused Products practice a method of monitoring a vehicle, from the vehicle, periodically determining a current status of the vehicle, the current status including current vehicle location. For example, the Renesas R-Car W2H is capable of detecting the current status of a vehicle as it supports Intelligence Transportation System (ITS) communication, and, on information and belief, integrates and prepares the Basic Safety Message (BSM) data packet,

which includes the vehicle location information. The Renesas R-Car W2H also contains a GPS module.



Source: https://www.renesas.com/en-us/solutions/automotive/products/rcar-w2h.html

54.    The Accused Products practice a method of scanning to locate an available wireless data network access point. For example, on information and belief, the Renesas R-Car W2H vehicle will scan and locate wireless network access points within an infrastructure, via the V2X Radio, and then it will share the current status of the vehicle.



*Id.*

22

55.     The Accused Products practice a method of periodically transmitting the current status of the vehicle to the located access point to an endpoint receiver. For example, on information and belief, the Renesas R-Car W2H will transmit the current status of the vehicle through the located access point (infrastructure) to an endpoint receiver, such as a centralized system for traffic management.

56.     Defendants have and continue to indirectly infringe one or more claims of the '232 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States. For example, Defendants' customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products. Defendants induce this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and they directly infringe the '232 Patent. Defendants perform these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '232 Patent, but while remaining willfully blind to the infringement. Through demonstrations, testing, repairs, and instructional guidance, Defendants use the Accused Products in a manner that directly infringes claim 1 of the '232 Patent.

57.    Defendants have and continue to indirectly infringe one or more claims of the '232 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '232 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '232 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '232 Patent. Defendants perform these affirmative acts with knowledge of the '232 Patent and with intent, or willful blindness, that they cause the direct infringement of the '232 Patent.

58.    MRL is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '232 Patent.

59.    MRL has suffered damages as a result of Defendants' direct and indirect infringement of the '232 Patent in an amount to be proved at trial.

60.    MRL has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '232 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '789 Patent)

61.    Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

62.     MRL has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '789 Patent.

63.     Defendants infringe, contribute to the infringement of, and/or induce infringement of the '789 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '789 Patent including, but not limited to, at least the Accused Products.

64.     Defendants have and continue to directly infringe the '789 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '789 Patent. Upon information and belief, these products include the Accused Products that practices the methods and systems covered by the '789 Patent.

65.     For example, Defendants have and continue to directly infringe at least claim 1 of the '789 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of monitoring a vehicle, the method comprising: from the vehicle, periodically determining a vehicle location; scanning to locate an available wireless data network access point; and transmitting a status of the vehicle through the located access point to an endpoint receiver.

66.     The Accused Products practice a method of monitoring a vehicle. For example, the Renesas R-Car W2H is capable of monitoring a vehicle via GPS.

67.     The Accused Products practice a method of monitoring a vehicle, from the vehicle, periodically determining a vehicle location. For example, the Renesas R-Car W2H is capable monitoring a vehicle, from the vehicle, periodically determining a vehicle location, via GPS.



*ITS protocol stack: ITS protocol partner software is available

Source: https://www.renesas.com/en-us/solutions/automotive/products/rcar-w2h.html

68.    The Accused Products practice a method of scanning to locate an available wireless data network access point. For example, the Renesas R-Car W2H can scan for available wireless data network access point via the V2X Radio.



*ITS protocol stack: ITS protocol partner software is available

*Id.*

69.    The Accused Products practice a method of transmitting a status of the vehicle through the located access point to an endpoint receiver. For example, on information and belief, the Renesas R-Car W2H can transmit its location to an endpoint receiver, such as a centralized

system for traffic management.

70.     Defendants have and continue to indirectly infringe one or more claims of the '789 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States. For example, Defendants' customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products. Defendants induce this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and they directly infringe the '789 Patent. Defendants perform these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '789 Patent, but while remaining willfully blind to the infringement. Through demonstrations, testing, repairs, and instructional guidance, Defendants use the Accused Products in a manner that directly infringes claim 1 of the '789 Patent.

71.     Defendants have and continue to indirectly infringe one or more claims of the '789 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered

for sale contributes to others' use and manufacture of the Accused Products such that the '789 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '789 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '789 Patent. Defendants perform these affirmative acts with knowledge of the '789 Patent and with intent, or willful blindness, that they cause the direct infringement of the '789 Patent.

72.    MRL is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '789 Patent.

73.    MRL has suffered damages as a result of Defendants' direct and indirect infringement of the '789 Patent in an amount to be proved at trial.

74.    MRL has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '789 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT V
### (Infringement of the '300 Patent)

75.    Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

76.    MRL has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '300 Patent.

77.    Defendants infringed, contributed to the infringement of, and/or induced infringement of the '300 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '300 Patent including, but not limited to, at least the Accused Products.

78.    Defendants have directly infringed the '300 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '300 Patent. Upon information and belief, these products include the Accused Products that practice the methods and systems covered by the '300 Patent.

79.    The Accused Products satisfy all claim limitations of numerous claims of the '300 Patent. For example, Defendants have and continue to directly infringe at least claim 1 of the '300 Patent. For example, on information and belief, the Renesas RH850 devices incorporate Renesas embedded flash memory and, practice a method of erasing a memory cell with a substrate that comprises a first region and a second region with a channel therebetween that has spillover electrons and a gate above the channel, and a charge trapping region that contains a first amount of charge.



Source: https://ieeexplore.ieee.org/stamp/stamp.jsp?arnumber=7265102



*Id.*

80.    The Renesas RH850 devices contain a substrate with two regions (for a given memory cell) that contain a channel between them, a gate above the channel, and a nitride film charge trapping region which contains trapped electrons in a programmed state until the cell is fully erased. The method comprises: generating neutralizing holes in the substrate; moving the neutralizing holes to the channel; and substantially neutralizing the spillover electrons with the neutralizing holes moved to the channel. Holes are generated by applying a large positive pulse to the source line for the memory cell. They move to the channel in response to the large negative voltage on the memory gate and thereby neutralize the spillover electrons.



Fig. 4.  Operating principle and voltages of SG-MONOS cell: (a) program, (b) erase, and (c) voltage table in each operation.

*Id.*

81.     Defendants have indirectly infringed one or more claims of the '300 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States. For example, Defendants' customers and end-users directly infringed, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products. Defendants induced this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intended and

they directly infringed the '300 Patent. Defendants performed these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '300 Patent, but while remaining willfully blind to the infringement. Through demonstrations, testing, repairs, and instructional guidance, Defendants use the Accused Products in a manner that directly infringes claim 1 of the '300 Patent.

82.    Defendants have indirectly infringed one or more claims of the '300 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '300 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '300 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '300 Patent. Defendants performed these affirmative acts with knowledge of the '300 Patent and with intent, or willful blindness, that they cause the direct infringement of the '300 Patent.

83.    MRL is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '300 Patent.

84.    MRL has suffered damages as a result of Defendants' direct and indirect infringement of the '300 Patent in an amount to be proved at trial.

<u>COUNT VI</u>
**(Infringement of the '968 Patent)**

85.      Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

86.      MRL has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '968 Patent.

87.      Defendants infringe, contribute to the infringement of, and/or induce infringement of the '968 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '968 Patent including, but not limited to, at least the Accused Products.

88.      Defendants have and continue to directly infringe the '968 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '968 Patent. Upon information and belief, these products include the Accused Products that practice the methods and systems covered by the '968 Patent.

89.      The Accused Products satisfy all claim limitations of numerous claims of the '968 Patent. For example, Defendants infringe claim 1 of the '968 Patent. For example, on information and belief, the Renesas RX600 family devices incorporate Renesas embedded flash memory and, incorporate a semiconductor device comprising: A memory cell array having a plurality of non-volatile memory cells. The Renesas RX600 family devices include non-volatile flash memory devices with multiple memory cells for storing data. A negative voltage generating circuit for applying a negative voltage to a word line of the memory cell array during an erasing operation of the memory cell array. The Renesas RX600 family devices include a circuit which generates an NHV (Negative High Voltage) to apply to the word line of the memory array during an erasing

operation. A positive voltage generating circuit for applying a positive voltage to a well of the memory cell array when the negative voltage reaches a predetermined voltage, wherein there is a timing gap between a start of applying the negative voltage and a start of applying the positive voltage. The Renesas RX600 family devices include a circuit which generates a PHV (Positive High Voltage) which is applied to the well of the memory cell during an erase operation. The positive voltage is applied when the negative voltage has reached a pre-determined level, and there is a timing gap in the start of application of the positive and negative voltages in the system.

90.    Defendants have and continue to indirectly infringe one or more claims of the '968 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States. For example, Defendants' customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products. Defendants induce this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and they directly infringe the '968 Patent. Defendants perform these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '968 Patent, but while remaining willfully blind to the infringement. Through demonstrations, testing, repairs, and instructional guidance, Defendants

use the Accused Products in a manner that directly infringes claim 1 of the '968 Patent.

91.    Defendants have and continue to indirectly infringe one or more claims of the '968 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '968 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '968 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '968 Patent. Defendants perform these affirmative acts with knowledge of the '968 Patent and with intent, or willful blindness, that they cause the direct infringement of the '968 Patent.

92.    MRL is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '968 Patent.

93.    MRL has suffered damages as a result of Defendants' direct and indirect infringement of the '968 Patent in an amount to be proved at trial.

94.    MRL has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '968 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT VII
### (Infringement of the '133 Patent)

95.    Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

96.    MRL has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '133 Patent.

97.    Defendants infringed, contributed to the infringement of, and/or induced infringement of the '133 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '133 Patent including, but not limited to, at least the Accused Products.

98.    Defendants have directly infringed the '133 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '133 Patent. Upon information and belief, these products include the Accused Products that practice the methods and systems covered by the '133 Patent.

99.    The Accused Products satisfy all claim limitations of numerous claims of the '133 Patent. For example, Defendants infringe claim 1 of the '133 Patent. For example, on information and belief, the RL78 MCUs, utilizes a method for providing a system level reset function for an electronic device comprising: performing a first reset function, operable under a low voltage condition of supply voltage of the electronic device wherein the low voltage condition characterizes an initial state upon energizing the electronic device. The RL78 MCUs implement this through the operation of a power on reset circuit that triggers a reset state at a voltage level below a set power on voltage that is lower than the operating voltage range of the device. Performing a second reset function comprising using a tunable monitor of the supply voltage. The RL78 MCUs implement this second reset function by determining whether the supply voltage has exceeded a LVD detection voltage which is calibrated during operation of the device. Performing a third reset function comprising setting a precision level wherein setting the precision reset level

comprises verifying calibration data relating to the precision reset level. The RL78 MCUs implement this function by utilizing a boot up function after power is up and for maintaining the power in the intended range. This reset function can be cleared after it is properly verified/calibrated by the system. Holding the electronic device in the system level reset condition responsive to any of said first, said second, and said third reset functions. In the RL78 MCUs, the system applies an internal reset signal during any of the reset signals generated by the first, second, or third reset functions discussed above.



Source: M16C 65C User's Manual: Hardware

100.    Defendants have indirectly infringed one or more claims of the '133 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States. For example, Defendants' customers and end-users directly infringed, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products. Defendants induced this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendants' inducement, Defendants' customers and end-users used the Accused Products in a way Defendants intended and they directly infringed the '133 Patent. Defendants performed these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '133 Patent, but while remaining willfully blind to the infringement. Through demonstrations, testing, repairs, and instructional guidance, Defendants use the Accused Products in a manner that directly infringes claim 1 of the '133 Patent.

101.    Defendants have indirectly infringed one or more claims of the '133 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '133 Patent is directly

infringed by others. The accused components within the Accused Products are material to the invention of the '133 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '133 Patent. Defendants performed these affirmative acts with knowledge of the '133 Patent and with intent, or willful blindness, that they cause the direct infringement of the '133 Patent.

102.    MRL is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '133 Patent.

103.    MRL has suffered damages as a result of Defendants' direct and indirect infringement of the '133 Patent in an amount to be proved at trial.

**COUNT VIII**
**(Infringement of the '688 Patent)**

104.    Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

105.    MRL has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '688 Patent.

106.    Defendants infringed, contributed to the infringement of, and/or induced infringement of the '688 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '688 Patent including, but not limited to, at least the Accused Products.

107.    Defendants have directly infringed the '688 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '688 Patent. Upon information and belief, these products

include the Accused Products that practice the methods and systems covered by the '688 Patent.

108.    The Accused Products satisfy all claim limitations of numerous claims of the '688 Patent. For example, Defendants infringe claim 1 of the '688 Patent. For example, on information and belief, the Renesas RA6M5 includes a circuit comprising: a plurality of circuit blocks, wherein at least one of the circuit blocks is an analog circuit block and at least one of the circuit blocks is a digital circuit block. As just one example, the Renesas RA6M5 includes analog circuit blocks, such as an A/D converter block, and digital circuit blocks, such as a Clocked Serial Interface Block; a bus coupling analog input/output data and digital input/output data for the plurality circuit blocks. For example, Renesas RA6M5 contains a P-Bus connecting peripheral blocks, including both analog and digital blocks; and a clock controlling the coupling of the analog input/output data and the digital input/output data to the bus.  For example, the Renesas RA6M5 utilizes a Low Power Sampling or LPS block, which includes a clock, to control the coupling of the analog input/output data and the digital input/output data to the bus.

Source: Renesas RA6M5 Data Sheet



Source: Renesas RA6M5 Data Sheet



*Id.*

109.    Defendants have indirectly infringed one or more claims of the '688 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendants' customers and end-users, in this District and elsewhere in the United States. For example, Defendants' customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products. Defendants induced this direct infringement through their affirmative acts of manufacturing, selling,

distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendants' inducement, Defendants' customers and end-users used the Accused Products in a way Defendants intended and they directly infringed the '688 Patent. Defendants performed these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '688 Patent, but while remaining willfully blind to the infringement. Through demonstrations, testing, repairs, and instructional guidance, Defendants use the Accused Products in a manner that directly infringes claim 1 of the '688 Patent.

110.    Defendants have indirectly infringed one or more claims of the '688 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '688 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '688 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '688 Patent. Defendants performed these affirmative acts with knowledge of the '688 Patent and with intent, or willful blindness, that they cause the direct infringement of the '688 Patent.

111.    MRL is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '688 Patent.

112.    MRL has suffered damages as a result of Defendants' direct and indirect infringement of the '688 Patent in an amount to be proved at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, MRL prays for relief against Defendants as follows:

a.    Entry of judgment declaring that Defendants directly and/or indirectly infringe(d) one or more claims of each of the Patents-in-Suit;

b.    Entry of judgment declaring that Defendants' infringement of the Patents-in-Suit is willful;

c.    An order awarding damages sufficient to compensate Plaintiff for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d.    Enhanced damages pursuant to 35 U.S.C. § 284;

e.    Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285;

f.    An accounting for acts of infringement;

g.    Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

h.     Such other and further relief as the Court deems just and proper.

Dated:  April 25, 2025                    Respectfully submitted,

                                          /s/ *Alfred R. Fabricant*
                                          Alfred R. Fabricant
                                          NY Bar No. 2219392
                                          Email: ffabricant@fabricantllp.com
                                          **FABRICANT LLP**
                                          411 Theodore Fremd Avenue,
                                          Suite 206 South
                                          Rye, New York 10580
                                          Telephone: (212) 257-5797
                                          Facsimile: (212) 257-5796

                                          ***ATTORNEYS FOR PLAINTIFF***
                                          ***MR LICENSING LLC***